IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| **WAL-MART STORES, INC.** | **PLAINTIFF/ COUNTERDEFENDANT** |
| v. | CASE NO.: 5:14-CV-5262 |
| **CUKER INTERACTIVE, LLC** | **DEFENDANT/ COUNTERCLAIMANT** |

**BRIEF IN SUPPORT OF MOTION FOR JUDGMENT
ON THE PLEADINGS ON COUNTERCLAIM**

**Introduction**

Walmart sued Cuker to recover the damages it has sustained as a result of Cuker's breach of the contract for the ASDA responsive website attached to the complaint. Cuker admits the contract but denies that it breached the contract. Cuker's answer includes a counterclaim against Walmart, with four claims for relief: (1) unjust enrichment - quantum meruit; (2) breach of contract; (3) Arkansas Trade Secrets Act; and (4) injunctive relief. ECF Dkt. 9, pp. 15-17. This motion addresses three of the four claims: unjust enrichment, trade secrets, and injunctive relief.

**Background Facts**

Walmart and Cuker negotiated a contract effective January 30, 2014, that consists of two parts: a Consulting Agreement ("CA") and Exhibit A to the Consulting Agreement, titled Statement of Work No. 1 to the Consulting Agreement Between Wal-Mart Stores, Inc. and Cuker Interactive LLC ("SOW"). Complt. Ex. A. Walmart hired Cuker to make its ASDA Groceries website functionality "responsive" (both as to current functionality and to features that Walmart planned to add to the website), meaning that customers using any devices would

1

not need to download an app in order to shop on the website. SOW, § I. The contract required Walmart to provide the road map for the planned features to be updated to the website by February 19, 2014. SOW, § IV(A). Walmart provided the road map of planned features to Cuker early, on February 16, 2014. Complt. ¶ 6(b). The contract required Cuker to incorporate these features in the wireframes by May. SOW, § IV(A). The last "code drop" (delivery of computer code) was to be made by May 23, 2014, so that the launch date of June 25, 2014 could be met. SOW, § VI(10, 13). The quality of Cuker's work was poor, its performance was slow, and it refused to provide the code that the contract required it to provide and that Walmart needed for the website, demanding more money than the contract called for after Walmart paid Cuker almost all of the contract price (payment that Cuker obtained by backdating invoices). Cuker's breach forced Walmart to hire and pay another company to complete the project and delayed the project launch by months.

In its counterclaim, Cuker claims that it did work that was outside the scope of the contract, for which it seeks additional payment under a theory of unjust enrichment or quantum meruit. ECF Dkt. 9, First Claim for Relief. Cuker also claims that Walmart misappropriated its unspecified trade secrets for which it seeks damages under the Arkansas Trade Secrets Act and injunctive relief. *Id.,* Third and Fourth Claims for Relief. These claims should be dismissed for failure to state a claim upon which relief can be granted. Rule 12(c), Fed. R. Civ. P.

## Standard of Review

Rule 8, Fed. R. Civ. P., requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Id.* at 678. The information in the complaint must be enough to provide grounds to support the claim and "to raise the right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). Labels, conclusory statements, or a formulaic recitation of the elements of the cause of action are not enough. *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Nor is alleging "the mere possibility of misconduct" enough. *Iqbal*, 556 U.S. at 678.

## Argument

### 1. Unjust enrichment-quantum meruit (Claim I).

Cuker alleges that it built and delivered to Walmart "templates, code, and other deliverables which were beyond the scope of the Contract." ECF Dkt. 9, ¶ 31. Cuker claims that the value of those things is "at least $1,466,517" or over 2 ½ times the contract price. *Id.*, ¶ 36. Cuker's allegations are contrary to the plain and unambiguous language of the Contract.

Indeed, the contract is a fixed price contract for the sum of $577,719.00. SOW, §§ VI, X(A); CA, § 1. The scope of work is set out in thorough detail in the contract, as clarified by the site map that the contract provided would "be refined during the design and planning process." SOW, § III, III(k).

The contract contains an express provision governing any expansion in the scope of the project:

> During the term of a SOW, if the Parties wish to alter, modify, expand or change the scope of the Project ("Change"), that Change requires a mutually agreed-upon amendment of the applicable SOW. Either Party may request a Change by submitting to the other Party a proposed change order in the form attached as Exhibit B ("Project Change Request" or "PCR") detailing the Change and any other relevant information that enables the Parties to implement the Change. No Change is authorized unless Walmart and Consultant have signed a Project Change Request to the applicable Statement of Work. Unless expressly provided

in the amended Statement of Work, fixed fees for the Project may not be
increased as a result of a Project Change Request.

CA, § 1.  Further, "(a)ny fees exceeding $577,719, not including travel and expense fees, must be pre-approved in writing by Walmart in the form of a Project Change Request per the Agreement." SOW, § X(A).  Cuker nowhere alleges that it requested any expansion of the scope of the contract, that it submitted any Project Change Request to Walmart, that any Project Change Request was approved by the parties, or that any fees exceeding the fixed contract price were pre-approved in writing by Walmart in the form of a Project Change Request, or in any other form for that matter.

Cuker's unjust enrichment/quantum meruit claim fails as a matter of law.  The law does not imply a contract when the parties have made a specific one on the same subject matter. *Glenn Mechanical, Inc. v. S. Ark. Reg'l Health Ctr., Inc.,* 101 Ark. App. 440, 445, 278 S.W.3d 583 (2008).  *Glenn Mechanical* conclusively establishes that no unjust enrichment claim lies in these circumstances.

In *Glenn Mechanical,* the parties entered into a written contract for dirt work.  That contract provided that any changes made in the amount of work involved, or in any other parts of the agreement, shall be in writing describing in detail the changes involved and the value of the changes to be mutually agreed upon between the parties. *Id.,* at 442.  The plaintiff did additional undercutting work, no writing about the additional work was ever executed, and the defendant refused to pay for it.  The court held that the plaintiff must bear the consequences of not getting the defendant's approval for the additional work as required by the contract. *Id.,* at 444.  The court soundly rejected the plaintiff's unjust enrichment-quantum meruit claim:

> [T]he parties had an enforceable written contract about the undercutting, and that contract prevents recovery on a quantum meruit basis.  With exceptions not applicable here, "the law never accommodates a party with an implied contract

4

> when he has made a specific on the same subject matter." *Lowell Perkins Agency, Inc. v. Jacobs,* 250 Ark. 952, 959, 469 S.W.2d 89, 92-93 (1971). Glenn's quasi-contract theories therefore fail **as a matter of law.** *Taylor v. George,* 92 Ark. App. 264, 274, 212 S.W.3d 17, 24-25 (2005) (promissory estoppel); *Coleman's Service Center, Inc. v. FDIC,* 55 Ark. App. 275, 299, 935 S.W.2d 289, 302 (1996) (unjust enrichment).

*Id.,* at 445 (emphasis added).

Similarly, a claim for unjust enrichment was dismissed on summary judgment in *Hall Contracting Corp. v. Entergy Svcs., Inc.,* 309 F.3d 468 (8th Cir. 2002) (applying Arkansas law). The parties in *Hall Contracting* entered into a lump-sum contract for work on a dam that contained a provision for written change orders. The plaintiff contractor sued to recover for "extra" work that was not covered by a written change order under an unjust enrichment theory. The court rejected the claim because the parties had a valid contract. 309 F.3d at 475-76.

In this case, just as in *Glenn Mechanical* and *Hall Contracting,* the parties have a written contract that covers thoroughly and in detail the project that Cuker was hired to do, and the method by which the scope of the project could be expanded. Thus, those cases control, and establish that Cuker has no claim for unjust enrichment or quantum meruit as a matter of law.

There is a second reason that Cuker has no claim for unjust enrichment or quantum meruit. A party cannot be unjustly enriched by receipt of that to which it is legally entitled. AMI 2445; *Coleman's Service Center, Inc. v. FDIC,* 55 Ark. App. 275, 299, 935 S.W.2d 289, 302 (1996), citing *Smith v. Whitener,* 42 Ark. App. 225, 228, 856 S.W.2d 328 (1993). Here, the contract specifies that all deliverables, or any portion of a deliverable, authored, developed, conceived, or created for Walmart by Cuker are the exclusive property of Walmart, are "work made for hire" (as that term is defined in 17 U.S.C. § 101), and all right, title and interest thereto automatically vests in Walmart. CA, § 3(a). Thus, Walmart was legally entitled to all

"templates, code, and other deliverables" (ECF Dkt. 9, ¶ 31) delivered to it by Cuker. Walmart is not, and under the contract cannot be, unjustly enriched by the receipt of any such materials.

For both of these reasons, no claim for unjust enrichment or quantum meruit lies as a matter of law. The First Claim for Relief in the counterclaim should be dismissed.

**2. Arkansas Trade Secrets Act (Claims III and IV).**

The Third and Fourth Claims for Relief also fail to state claims upon which relief can be granted. The Third Claim for Relief seeks damages for Walmart's alleged misappropriation of Cuker's trade secrets, and the Fourth Claim for Relief seeks injunctive relief for the same alleged misappropriation. ECF Dkt. 9, ¶¶ 42-51.

These claims are barred as a matter of law by the contract between the parties. As explained above, all deliverables are the exclusive property of Walmart, are "work made for hire", and all right, title and interest thereto automatically vests in Walmart. CA, § 3(a). If any work product is not "work made for hire," or if all right, title and interest thereto did not automatically vest in Walmart, Cuker "fully and irrevocably grants, assigns and conveys to Walmart all Intellectual Property Rights in and to all Work Product. (Cuker) may not seek … Intellectual Property Rights protection for any Work Product. (Cuker) must not claim … Intellectual Property Rights in any Work Product." CA, § 3(b).

> Further, Section 3(c) of the Consulting Agreement provides:
>
> (c) <u>Consultant's Intellectual Property.</u>  Deliverables must not include, and Consultant may not incorporate, Consultant's preexisting proprietary information, Consultant-owned materials, document templates, or project tools used by Consultant to deliver the Services (collectively, "Consultant Intellectual Property").  Excepting any Software already licensed to Walmart under this Agreement, unless otherwise agreed to in a Statement of Work, if (i) Consultant Intellectual Property of Software is made part of the Deliverables (with or without Walmart's written permission), or (ii) any Consultant Intellectual Property is required to use the Deliverables or receive benefit from the Services, Consultant grants to Walmart a nonexclusive, worldwide, royalty-free, irrevocable, perpetual

>license to use, execute, reproduce, display, perform, distribute copies of, and prepare derivative works of the Consultant Intellectual Property and authorize others to do any or all of the foregoing in connection with Walmart's use of the Deliverables or Services.

"Intellectual Property Rights" are defined in the contract as "any and all right, title and interest, arising or existing as of the Effective Date, or at any time thereafter, anywhere in the world, including, but not limited to, any copyright, moral right, patent, patent registration, service mark, service name, trade name, **trade secret,** trademark, or other proprietary right arising or enforceable under any United States federal or state law, rule or regulation, non-United States law, rule or regulation, or international treaty. CA, § 3(e) (emphasis added).

These provisions of the contract negate any claim by Cuker for misappropriation of trade secrets by Walmart.

In violation of the rules of pleading, Cuker does not identify what specific information it claims to be a trade secret (other than UX guidelines that Cuker *did not* provide to Walmart). ECF Dkt. 9, ¶ 23. Thus, Walmart is left to speculate what information Cuker contends constitutes a trade secret.

Regardless, in order to qualify as a trade secret, the information sought to be protected must be "the subject of reasonable efforts to maintain its secrecy." Ark. Code Ann. § 4-75-101(4); AMI 2602; *Texarkana Behavioral Assocs., L.C. v. Universal Health Svcs., Inc.,* 748 F.Supp.2d 1008, 1013 (W.D. Ark. 2010). Cuker identifies no efforts whatsoever made by it to maintain the secrecy of any information provided to Walmart. Indeed, it is difficult to imagine that any such efforts could be made in view of the contract between the parties. The contract clearly deprives such information of trade secret protection, proscribes the inclusion of any trade secrets of Cuker in deliverables, and allows Walmart the unfettered right to use the information if it is included. CA § 3.

7

> Misappropriation is defined in Ark. Code Ann. § 4-75-601 as:
>
> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who
>
>> (i) used improper means to acquire knowledge of the trade secret; or
>>
>> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>>> (a) derived from or through a person who had utilized improper means to acquired it;
>>> (b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>> (c) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limits its use; or
>>
>> (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

"Improper means" is defined as the acquisition of a trade secret by theft or bribery or misrepresentation or breach of a duty to maintain secrecy or inducing another to breach a duty of secrecy or espionage through any means. Ark. Code Ann. § 4-75-101(1); AMI 2603. If Cuker shared any information that it now claims to be a trade secret with Walmart, Walmart did not acquire the information by "improper means." Cuker does not allege that Walmart acquired any information from Cuker improperly—i.e., by theft, bribery, misrepresentation, breach by anyone of a duty to maintain secrecy, or espionage. Indeed, Cuker admits that Cuker itself provided the alleged trade secrets to Walmart. ECF Dkt. 9, ¶ 27. *Texarkana Behavioral Assocs., L.C. v. Universal Health Svcs., Inc., supra,* 748 F.Supp.2d at 1015 ("[Plaintiff] cannot establish misappropriation by improper means. There was simply nothing improper about how the information was acquired: [plaintiff] supplied it to [defendant] in order to facilitate [defendant's] potential purchase of [plaintiff].") With no efforts by Cuker to specify any information provided

to Walmart that Cuker identified as confidential or protected as trade secrets, Cuker has not alleged misappropriation under Ark. Code Ann. § 4-75-601(A).

Nor can Cuker argue that it did not consent to the disclosure or use of any trade secrets so as to establish misappropriation under § 4-75-601(B).  If the alleged unidentified trade secrets were included in any deliverables or were required to use or receive benefit from the deliverables or the services provided by Cuker, then they are now either owned by or licensed to Walmart under the plain terms of the contract.  CA, § 3.  Thus, their use or disclosure does not, and cannot, constitute misappropriation.

Since under the allegations of the counterclaim, read in conjunction with the contract between the parties, Walmart did not and could not misappropriate any trade secrets of Cuker, the Third and Fourth Claims for Relief should be dismissed.

## Conclusion

For the foregoing reasons, the counterclaim fails to state claims for unjust enrichment and violation of the Arkansas Trade Secrets Act on which relief can be granted.  The First, Third and Fourth Claims for Relief asserted in the counterclaim should be dismissed on the pleadings.

    Respectfully submitted,

    **KUTAK ROCK LLP**

    By: /s/ Teresa Wineland
        Teresa Wineland, AR 81168
        Teresa.wineland@kutakrock.com
        Jess Askew III, AR 86005
        Jess.askew@kutakrock.com
        124 West Capitol Avenue, Suite 2000
        Little Rock, AR  72201-3706
        (501) 975-3000 Telephone
        (501) 975-3001 Facsimile

        ATTORNEYS FOR PLAINTIFF,
        WAL-MART STORES, INC.

## CERTIFICATE OF SERVICE

  I hereby certify that a copy of the foregoing was served on the following counsel for defendant/counterclaimant by means of the CM/ECF system on this 14th day of October, 2014.

Steven Shults
sshults@shultslaw.com
Debra K. Brown
dbrown@shultslaw.com
Shults & Brown, LLP
200 West Capitol Avenue, Suite 1600
Little Rock, AR 72201-3637

              /s/ Teresa Wineland
              Teresa Wineland