IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WAL-MART STORES, INC.                                                      PLAINTIFF

V.                              CASE NO. 5:14-CV-5262

CUKER INTERACTIVE, LLC                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings (Doc. 12) and Brief in Support (Doc. 13), Defendant's Brief in Opposition (Doc. 17), and Plaintiff's Reply (Doc. 21).  The Court also considered the parties' oral arguments on the Motion during a hearing conducted on December 11, 2014.  For the reasons set forth herein, Plaintiff's Motion for Judgment on the Pleadings is **DENIED**.

## I.  BACKGROUND

In late January 2014, Plaintiff Wal-Mart Stores, Inc. ("Walmart") and Defendant Cuker International, LLC ("Cuker") signed a written agreement ("Contract") under which Cuker agreed to provide Walmart consulting services in exchange for monetary compensation, in order to help Walmart make the website for its ASDA Groceries business ("Website") mobile responsive.[1]  The consulting relationship quickly soured. Walmart accused Cuker, *inter alia*, of missing various contractual deadlines, providing poor-quality work product, wrongfully withholding work product, and demanding extra-contractual payment for the performance of its contractual duties.  Cuker accused Walmart, *inter alia*, of withholding contractually-obligated payments from Cuker,

---

[1] A "mobile responsive" website is a website that can easily be used on a mobile device without requiring the user to download a separate application to the device.

mischaracterizing aspirational target dates as strict deadlines, causing Cuker's turnover of work product to be delayed by imposing excessive revisions on good-quality work product, demanding that Cuker perform work outside the scope of the Contract without additional compensation, and misappropriating Cuker's trade secrets.

On July 29, 2014, Walmart filed a two-count Complaint against Cuker under seal in the Circuit Court for Benton County, Arkansas, (1) alleging breach of contract, and (2) seeking a declaratory judgment that Walmart does not owe Cuker any additional money under the Contract and that Walmart "owns all Work Product produced by Cuker." (Doc. 4, ¶ 49). Cuker removed the case to this Court on August 26, 2014, on the basis of diversity jurisidiction. (Doc. 2, ¶ 2). On September 2, 2014, Cuker filed its Answer and Counterclaim (Doc. 9), setting forth four claims for relief: (1) unjust enrichment, (2) breach of contract, (3) violation of the Arkansas Trade Secrets Act, Ark. Code Ann. §§ 4-75-601 *et seq.* ("ATSA"), and (4) injunctive relief pertaining to Walmart's alleged misappropriation of Cuker's trade secrets. Walmart filed its Answer to Counterclaim (Doc. 11) on September 26, 2014.

On October 14, 2014, Walmart filed a Motion for Judgment on the Pleadings (Doc. 12) and Brief in Support (Doc. 13) (collectively, "Motion"), asking the Court to dismiss Cuker's claims for unjust enrichment, ATSA violation, and injunctive relief, pursuant to Fed. R. Civ. P. 12(c) for failure to state a claim. Cuker filed its Brief in Opposition (Doc. 17) ("Response") on November 7, 2014, and Walmart filed its Reply (Doc. 21) on November 26, 2014. Walmart's Motion is now ripe for consideration by the Court.

## II.  LEGAL STANDARD

Since Walmart filed this case in Arkansas state court, and Cuker removed it to this Court on the basis of the parties' diversity of citizenship, this Court must apply federal procedural law and state substantive law.  *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  The same legal standard applies to a motion for judgment on the pleadings under Rule 12(c) as to a motion to dismiss under Rule 12(b)(6).  *Id.*  To survive such a motion, a pleading must provide "a short and plain statement of the claim that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Nevertheless, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a [pleading] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  Simply put, "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

In applying this standard to the instant pleadings, the Court must accept as true all factual allegations set out in the pleadings by Cuker, and construe the pleadings in the light most favorable to Cuker, drawing all inferences in Cuker's favor.  *See Ashley County*, 552 F.3d at 665.  The Court may consider the Contract that is attached as an exhibit to Walmart's Complaint because it is "necessarily embraced by the pleadings." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).  The Contract's choice-of-law provision invokes Arkansas law.  (Doc. 4-1, p. 6).

### III.  DISCUSSION

### A.  Cuker's Unjust Enrichment Claim

Walmart argues that Cuker's unjust enrichment claim should be dismissed for two independent reasons.  First, Walmart cites several cases, including *Glenn Mech., Inc. v. S. Ark. Reg'l Health Ctr., Inc.*, 101 Ark. App. 440 (2008), and *Hall Contracting Corp. v. Entergy Svcs., Inc.*, 309 F.3d 468 (8th Cir. 2002), for the proposition that under Arkansas law a claim for unjust enrichment cannot stand where the parties have a contractual relationship on the same subject matter.  However, while this is a correct statement of the general rule, it is not the end of the matter.  Arkansas law permits a number of exceptions to this rule, including "where the contract fails on some basis, or does not fully address a subject, or *disputed performance is compelled under protest*." *QHG of Springdale, Inc. v. Archer*, 2009 Ark. App. 692, at *11 (emphasis added).

Cuker alleges that Walmart provided Cuker a list of demands on February 12, 2014, that Cuker told Walmart were "way beyond the scope of the Contract . . . and . . . would change . . . the amount Walmart paid Cuker."  (Doc. 9, p. 2, ¶ 6(a)(2), (3)). Walmart insisted on its demands, and Cuker worked to meet them while maintaining its

position that the demands were beyond the scope of the Contract and would require additional payment from Walmart.  On July 16, 2014, Cuker "demanded that Walmart pay Cuker $1,524,146," an amount that included a still-unpaid balance of $57,629 owed by Walmart under the Contract, with the remainder being the value of the allegedly extra-contractual services rendered by Cuker.  *Id.* at p. 9, ¶ 43.  The next day, Cuker delivered the final product to Walmart.  *Id.* at p. 9, ¶ 44.  Walmart still has not paid Cuker any of the money that was demanded on July 16, 2014.  *See id.* at p. 14, ¶¶ 23-25. Viewing these allegations in the light most favorable to Cuker, the Counterclaim pleads facts sufficient to support a claim of unjust enrichment on the basis that Cuker was compelled to give a disputed performance under protest—unless Walmart prevails on its second argument against Cuker's unjust enrichment claim, which is that Walmart was contractually entitled to *all* the work that Cuker performed for Walmart.

Cuker alleges that on February 12, 2014, Walmart presented Cuker with a list of work demands that Cuker told Walmart was outside the scope of the Contract, (Doc. 9, p. 2, ¶ 6(a)(2), (3)), and that "Walmart never gave Cuker a written Project Change Request form," *id.* at p. 14, ¶ 24).  The Court has examined Exhibit B to Walmart's Complaint, and finds that the demands contained within it are highly technical and perfunctory in nature.  The Court cannot even come close to discerning their meaning without the assistance of additional factual context and expert testimony from outside the pleadings.  Therefore, at this time the Court is unable to determine whether those demands exceed the scope of the Contract.  Since all reasonable inferences must be resolved in favor of Cuker at this stage of proceedings, the Court presumes for purposes of this Motion that the work demands contained in Exhibit B to Walmart's

5

Complaint are outside the scope of the Contract.  Cuker has pleaded sufficient facts to support a claim for unjust enrichment.

### B.  Cuker's ATSA and Injunctive Relief Claims

Walmart's arguments for dismissal of Cuker's ATSA and injunctive relief claims essentially boil down to two independent propositions: (1) the Contract bars these claims by its own terms; and (2) even if the Contract does not bar these claims, Cuker has not pleaded sufficiently specific facts to show that any particular information qualified as a trade secret or that misappropriation of any such information occurred. With regard to Walmart's contractual argument, the contract states that "Consultant may not seek . . . Intellectual Property Rights protection for any Work Product," (Doc. 4-1, § 3(b)), and defines "Intellectual Property Rights" as including trade secrets, *id.* at § 3(e). However, elsewhere the Contract contains a mutual acknowledgement that "either Party may receive . . . Confidential Information," *id.* at § 4(a), and defines "Confidential Information" to include "any trade secret," *id.* at § 4(b)(iv).  Additionally, the Contract imposes a duty on any receiving party to "keep . . . any trade secret of Disclosing Party confidential as long as that information remains a trade secret."  *Id.* at § 4(a)(ii).  The Court finds that the Contract does not bar ATSA claims regarding trade secrets that are not "Work Product" as that term is defined in section 3(a) in the Contract.

The Court now turns to Walmart's argument that Cuker has not pleaded sufficiently specific facts to show that any particular information qualified as a trade secret or that misappropriation of any such information occurred.  The ATSA defines "trade secret" as meaning:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ark. Code Ann. § 4-75-601(4).  The ATSA defines "misappropriation" as meaning:

(A) Acquisition of a trade secret of another person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(i)    Used improper means to acquire knowledge of the trade secret; or

(ii)   At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

(a) Derived from or through a person who had utilized improper means to acquire it;

(b) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(c) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii)  Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake[.]

*Id.* at § 4-75-601(2).

Cuker alleges in its Counterclaim that "Walmart demanded, and Cuker provided, certain . . . trade secrets . . . of Cuker's to which Walmart was not entitled." (Doc. 9, pp. 14-15, ¶ 27).  Cuker further alleges that "Walmart knew that it was not entitled to these

things when it demanded them from Cuker's technical team, rather than Cuker's executives." *Id.*  The Counterclaim also states that "[d]espite demand, Walmart has refused to return these things to Cuker.  Instead, Walmart has appropriated them, used them for its own benefit, and given them to others who compete with Cuker, all to Cuker's competitive disadvantage." *Id.*  Walmart argues in its Motion that Walmart cannot possibly have used improper means to obtain Cuker's trade secrets if Cuker provided the trade secrets to Walmart.  However, if Cuker's allegations are accepted as true and viewed in the light most favorable to Cuker, they support a reasonable inference that Walmart deliberately demanded trade secrets from employees of Cuker who were unaware that Walmart was not entitled under the Contract to that information, and then disclosed those trade secrets to Cuker's competitors and used them for their own benefit.  Cuker has pleaded sufficient facts to support the "misappropriation" prong of an ATSA claim.

The question whether Cuker has pleaded sufficient facts to support the "trade secrets" prong of an ATSA claim is more difficult.  In its Motion and Reply, Walmart cites five different cases that analyze the meanings and requirements of "trade secret" and "misappropriation" under the ATSA.  However, only one of those cases performs this analysis in the context of a motion to dismiss.  *Compare Ballard Group, Inc. v. BP Lubricants USA, Inc.*, 2014 Ark. 276 (reversing dismissal of plaintiff's ATSA claim under Ark. R. Civ. P. 12(b)(6)) *with Texarkana Behavioral Assocs., L.C. v. Universal Health Svcs., Inc.*, 748 F. Supp. 2d 1008 (W.D. Ark. 2010) (summary judgment); *Welsco, Inc. v. Brace*, 2014 WL 4929453 (E.D. Ark. Sept. 30, 2014) (summary judgment); *Southeast X-Ray, Inc. v. Spears*, 929 F. Supp. 2d 867 (W.D. Ark. 2013) (preliminary injunction);

*Saforo & Assocs., Inc. v. Porocel Corp.*, 337 Ark. 553 (1999) (appeal from trial). Cuker's Response does not cite any cases analyzing the sufficiency of pleaded facts to support an ATSA claim, and the Court has not found any cases other than *Ballard Group* that do so.

Unfortunately, even *Ballard Group* is of no help here.  While it is certainly true that the complaint in *Ballard Group* contained many more specific factual allegations in support of its ATSA claim than Cuker's Counterclaim does, the *Ballard Group* court simply held that the plaintiff pleaded sufficient facts to support its claim of an ATSA violation, and gave no indication of what would constitute insufficient specificity.  *See* 2014 Ark. 276, at *9-*13.  Furthermore, *Ballard Group*'s analysis did not focus on whether sufficient facts had been pleaded to support the *existence* of trade secrets, but rather on whether the act of misappropriation had been sufficiently pleaded.  2014 Ark. 276, at *8.  Finally, and most importantly, even if the *Ballard Group* court had held that the existence of trade secrets was insufficiently pleaded, it would have made such a holding under a more demanding pleading standard than that being applied to the instant motion; Arkansas state courts apply the rule of "fact pleading" on motions to dismiss, rather than the more permissive rule of "notice pleading."  *See Graham v. Bryce Corp.*, 348 F. Supp. 2d 1038, 1044 (E.D. Ark. 2004) ("The Federal Rules of Civil Procedure require only notice pleading, not the more stringent 'fact-pleading' requirements of Arkansas state court."); *see also Garrett v. Cassity*, 2010 WL 2540748, at *8 (E.D. Mo. June 17, 2010) ("*Twombly* and *Iqbal* may have refined notice pleading by emphasizing that legal conclusions couched as factual assertions do not satisfy Rule

8's requirements, but they did not go so far as requiring fact pleading under the Federal Rules of Civil Procedure.").

Walmart argues that the Counterclaim is factually deficient because it does not allege, *inter alia*, how and by whom the trade secrets were used, how Walmart knew they were trade secrets, how the trade secrets derive economic value from not being known, the extent to which the trade secrets are known outside the business and by persons involved in the business, the efforts Cuker made to develop the trade secrets and maintain their secrecy, or the actual loss Cuker has sustained as a result of the trade secrets' misappropriation.  Walmart is certainly correct that Cuker has alleged none of these things.  However, Walmart has not provided any authority holding that Cuker must allege any of these specific things in order to survive a Rule 12 motion on an ATSA claim.  Likewise, the Court is unaware of any such authority.

Cuker's allegations are factually thin with regard to the trade secrets themselves, but the Court is persuaded that in the broader context of the pleadings they give Walmart "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). Accepting Cuker's allegations as true and drawing all reasonable inferences from the totality of the pleadings in Cuker's favor, Walmart intentionally obtained through dishonest means confidential information of Cuker's that: (1) was not "Work Product" as defined by the Contract; (2) derived independent economic value from its secrecy; and (3) was the subject of reasonable efforts by Cuker to maintain its secrecy.  As pleaded, the facts and circumstances giving rise to Cuker's ATSA and injunctive relief claims are encompassed within the same general set of facts and circumstances giving rise to the

parties' other claims in this case on which the parties will already be conducting discovery.  If the discovery process uncovers insufficient proof regarding the existence or misappropriation of Cuker's alleged trade secrets, then Walmart can simply bring those deficiencies to the Court's attention on a motion for summary judgment.

## IV. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 12) is **DENIED**.

**IT IS SO ORDERED** this ___12th___ day of December, 2014.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE