IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**WAL-MART STORES, INC.**                                                     **PLAINTIFF/
COUNTER-DEFENDANT**

**V.**                       **CASE NO. 5:14-CV-5262**

**CUKER INTERACTIVE, LLC**                                      **DEFENDANT/
COUNTER-CLAIMANT**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Plaintiff Wal-Mart Stores, Inc.'s ("Walmart") Motion to Disqualify Dr. Patrick Kennedy as an Expert and to Exclude His Testimony (Doc. 137) and Brief in Support (Doc. 138-1), Defendant Cuker Interactive, LLC's ("Cuker") Response in Opposition (Doc. 152-3), and Walmart's Reply (Doc. 160). For the reasons given below, Walmart's Motion is **DENIED**.

### I. BACKGROUND

In January 2014, Walmart and Cuker signed a contract under which Walmart agreed to pay Cuker a fixed fee of $577,719, in exchange for Cuker's provision of certain services to help make the website for Walmart's "ASDA Groceries" business responsive irrespective of the device on which it is being viewed, such as a desktop or a mobile phone. *See* Doc. 124-7, pp. 8, 17. The relationship between Walmart and Cuker quickly soured, with recriminations being exchanged, and ultimately the instant lawsuit was filed. Among the claims at issue in this case are counterclaims by Cuker against Walmart for breach of contract, fraudulent inducement, and unjust enrichment. Essentially, Cuker seeks to recover damages from Walmart for work it provided Walmart that Cuker

1

contends is outside the contract's scope of work. Cuker has retained Dr. Kennedy, an economist, to provide expert opinions in support of its claims for damages. Walmart has moved to disqualify Dr. Kennedy as an expert in this case; this motion has been fully briefed and is now ripe for decision.

## II. LEGAL STANDARD

The decision whether to exclude expert testimony is committed to a district court's discretion—subject, of course, to the Federal Rules of Evidence, including Rule 702. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (2014). Rule 702 states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The Eighth Circuit has "boiled down" these requirements into a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Johnson*, 754 F.3d at 561 (quoting *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008)).

The proponent of expert testimony bears the burden of showing by a preponderance of the evidence that these requirements are satisfied, but "[c]ourts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757–58 (8th Cir. 2006). Nevertheless, "a court should not admit opinion evidence that 'is connected to existing

data only by the *ipse dixit* of the expert.'" *Id.* at 758 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

## III. DISCUSSION

Walmart contends that Dr. Kennedy should be disqualified as an expert because his report is (1) not based on any scientific, technical, or other specialized knowledge, (2) based on unfounded assumptions and speculation, and (3) not relevant or useful to any ultimate issue of fact. As to the absence of specialized knowledge, Walmart argues that Dr. Kennedy "does not have any expertise in the field of software development," and that he has "no specialized knowledge . . . regarding the pricing of responsive website development services." (Doc. 138-1, p. 7). This would be a fine argument against permitting an economist to provide opinion testimony about software. *Cf. Hartford Fire Ins. Co. v. Harris Co. of Ft. Smith, Inc.*, 2015 WL 7067806, at *3 (W.D. Ark. Nov. 12 2015) (holding that an architect was not competent to provide expert testimony on certain structural engineering matters). But *software* is not the subject on which Dr. Kennedy would opine; his opinion is being offered on *damages*, which is obviously a matter for which economic expertise can be useful. Walmart also argues that "[n]one of Dr. Kennedy's analysis relies on his economic background," but that rather he has simply "performed a series of simple arithmetic calculations." (Doc. 138-1, p. 7). However, the Eighth Circuit has explicitly held that "[t]here is not . . . an implicit requirement in Fed. R. Evid. 702 for the proffered expert to make **complicated** mathematical calculations." *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1040 (8th Cir. 2011) (emphasis in original).

3

As to the issue of unfounded assumptions and speculation, Walmart makes two specific arguments: first, that Dr. Kennedy made an unfounded assumption of how much time Cuker spent working on the project at issue in this case, (Doc. 138-1, pp. 8–13), and second, that Dr. Kennedy unreasonably relied on only one comparator contract when forming his opinion on the value of Cuker's work for Walmart, *see id.* at 13–14. The first of these arguments is easily disposed of. While Walmart contends Dr. Kennedy failed to consider Cuker's internal records of how many hours were spent on the project, it is perfectly clear from Dr. Kennedy's report and his deposition testimony that he *did* consider them and concluded they were unreliable because they had been incompletely and lackadaisically compiled (due to the instant contract being a fixed-fee arrangement rather than one for hourly compensation), and accordingly grounded his calculations instead on "the underlying implied value of additional" page templates that Cuker claims it provided to Walmart. *See* Doc. 138-1, pp. 25–26, pp. 63–64. Subject to proper foundations being laid at trial, this criticism goes to weight, not admissibility.

Walmart's second argument requires a more nuanced discussion. When Dr. Kennedy was calculating Cuker's damages, he derived a per-template sub-fee for Cuker's Walmart project from the total fee Walmart contracted to pay Cuker and the total number of templates Cuker claims to have contracted to create for Walmart. In order to check the reasonableness of this per-template sub-fee, he compared it with an analogous derivation that he performed on a 2015 fixed-fee contract between Cuker and Sunbelt Rentals, Inc. ("Sunbelt") to launch a complex, responsive e-commerce website for Sunbelt. Walmart contends that Cuker "withheld" from Dr. Kennedy a more strongly analogous 2012 fixed-fee contract between Cuker and Trex Company, Inc. ("Trex"), and that Dr. Kennedy's

failure to compare his results against the Trex contract as he did against the Sunbelt contract renders his report unreasonable. Cuker responds that "[t]he Sunbelt and Walmart contracts are far more closely aligned because they both deal with ecommerce websites that are particularly complex, whereas the *Trex website is not an ecommerce website* and is used to only look at products and not buy them directly." (Doc. 152-3, p. 13) (emphasis in original). Cuker directs the Court's attention to http://www.trex.com so that the Court may see this for itself. Walmart counters in its reply that this is a "demonstrably false contention" which "is easily debunked by a simple view of the publicly-accessible website, which shows full e-commerce functionality, with shopping cart and online purchasing features." (Doc. 160, p. 8). Walmart then provides three screenshots from http://shop.trex.com so that the Court may see this for itself.

The Court has visited both http://www.trex.com and http://shop.trex.com, and makes several observations. *First*, it appears that Cuker is correct that http://www.trex.com "is used to only look at products and not buy them directly," and that Walmart is correct that one may indeed buy products directly from http://shop.trex.com. However, of central importance is the Court's *second* observation, which is that *these are two separate websites*. It is apparent from these two websites' publicly-viewable front-end source code that they are hosted on separate platforms and servers. *Compare* view-source:http://www.trex.com *with* view-source:http://shop.trex.com (each last visited on Nov. 21, 2016).

So the critical question here is: on which of these websites did Cuker contract to work in 2012? When Walmart provided the Court a copy of the Trex contract, it failed to include Exhibit A to that contract—the Statement of Work for that project—which would

5

likely have shed some valuable light on the answer to this question. *See* Doc. 138-1, pp. 137–43. Lacking the Statement of Work for the Trex contract, the Court took the liberty of searching the Internet for publicly-viewable information about the shop.trex website. A blog entry by Trex dated April 15, 2015, announces that "Trex has launched a new online store that allows you to purchase samples of our composite decking boards before making a final decision. . . . To view our site and place your order for decking samples, visit shop.trex.com." *See* http:// www.trex.com/inspiration/blog/detail/shop-trex-because-seeing-is-believing/ (last visited on Nov. 21, 2016).

Taking judicial notice of these publicly-available facts, and being unable to find the 2012 Trex contract's Statement of Work anywhere in the record,[1] the Court finds that it is much more likely than not that Cuker's 2012 contract with Trex was for work on a website that, as Cuker represents to the Court, "is not an ecommerce website and is used to only look at products and not buy them directly," (Doc. 152-3, p. 13)—*i.e.*, that Cuker contracted in 2012 to perform work only on http://www.trex.com, and *not* on http://shop.trex.com, which appears likely not to have even existed until two-and-a-half years later. "Regardless," then, "of whether" Walmart "has intentionally attempted to mislead the Court through its failed efforts to distinguish the" two different Trex websites, "the point stands that Dr. Kennedy's methodology is" not rendered "unreliable" by his failure to use a comparator contract that appears to have been far less analogous than

---

[1] Although not necessarily dispositive here, the Court remains curious as to why Walmart failed to include a copy of the Statement of Work for Cuker's 2012 Trex contract. By no later than December 2, 2016, Walmart is directed to provide a copy, if it has one, of this Statement of Work, along with an explanation as to why it was not attached to its Motion.

the Sunbelt contract to the instant Walmart contract. *Cf.* Doc. 160, p. 10 (Walmart's Reply). Again, Walmart's criticism goes to weight, not admissibility.

The Court turns now to Walmart's final argument in favor of disqualifying Dr. Kennedy, which is that his testimony "is not relevant or useful to any ultimate issue of fact" because the contract between Walmart and Cuker fully "addresses what is to happen if the scope of the project changes and Cuker seeks additional compensation." (Doc. 138-1, p. 15). This argument assumes the contract will not be found void and that Cuker will not be able to recover unjust enrichment for any work that Cuker contends it provided Walmart that was outside the scope of the contract. But Cuker presently has claims for fraudulent inducement and unjust enrichment that are still live, and the Court certainly is not going to pre-judge any issues of liability on those claims through the vehicle of an order on a motion to disqualify an expert witness.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff Wal-Mart Stores, Inc.'s Motion to Disqualify Dr. Patrick Kennedy as an Expert and to Exclude His Testimony (Doc. 137) is **DENIED**.

**IT IS SO ORDERED** on this 29th day of November, 2016.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE