IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**WAL-MART STORES, INC.**                                    **PLAINTIFF/**
                                                  **COUNTER-DEFENDANT**

**V.**                          **CASE NO. 5:14-CV-5262**

**CUKER INTERACTIVE, LLC**                            **DEFENDANT/**
                                                  **COUNTER-CLAIMANT**

## OPINION AND ORDER

Currently before the Court are Defendant Cuker Interactive, LLC's ("Cuker") Motion

in Limine filed on December 2, 2016 (Doc. 186) and Unredacted Brief in Support (Doc.

187-1), and Plaintiff Wal-Mart Stores, Inc.'s ("Walmart") Response in Opposition (Doc.

192).  Cuker's Motion seeks liminal relief on a wide variety of discrete issues.  As further

explained below, Cuker's Motion is **GRANTED IN PART AND DENIED IN PART**.

**1.      Exclusion of pejorative words.**

Cuker asks the Court to prohibit Walmart's attorneys from referring to Adel Atalla's

son by his full name "Osama" instead of the name "Sam," which is apparently, what his

father calls him, *see* Doc. 186-2, pp. 6–7, and what he goes by in public, *see* Doc. 187-

1, p. 2.  Cuker contends Sam's full name of Osama has no probative value, and that

referring to him by that name would have the potential of inciting bias against Cuker,

presumably because it is a name shared by the mastermind of the September 11, 2001

terroristic attacks on the World Trade Center in New York City.  Walmart opposes Cuker's

request, arguing that it is improper because "[a]pparently Cuker believes that the proper

full name of a human being is a 'pejorative word,' or that a Western District of Arkansas

jury will be so negatively influenced by a Middle Eastern name that the name should be westernized." (Doc. 192, p. 3). Walmart has provided zero evidence or explanation of why it would need to refer to Sam by his full name instead of the name that he ordinarily uses, though the Court can imagine that there may be situations where that would be appropriate—for example, when referring to a line on a document in evidence where the name is written thus.

The Court will stop short a blanket prohibition on the use of Sam's full first name because the Court cannot envision every possible scenario where it could potentially become relevant. But the Court will prohibit Walmart from making any *gratuitous* references to Sam's full first name, on the grounds that such references would be substantially more unfairly prejudicial than probative. *See* Fed. R. Evid. 403. As for what constitutes "gratuitous" in any given situation, the Court will simply have to wait for the context at trial, but would ask the attorneys and witnesses to use their common sense and to look to their basic sense of human decency for guidance. Counsel must approach the bench and seek a ruling in advance, if they believe the context at trial establishes a non-gratuitous basis to warrant the making of any such references.

Cuker also asks the Court to preclude Walmart from making statements to the effect "that a verdict for Cuker would be like winning the lottery, jackpot justice, any other references to a game of chance, or that Cuker seeks to cause harm to Walmart with a verdict." (Doc. 187-1, p. 2). Cuker has not pointed the Court towards any specific instances or evidence of such statements and in the absence of a particular remark the Court will not speculate at this time as to the potential prejudicial effect. Counsel must

obtain the Court's permission prior to making any lottery/jackpot type arguments, or substantially similar remarks, in front of the jury.

## 2.   Exclusion of prejudicial statements regarding Cuker's counsel.

Cuker asks the Court to prevent Walmart from "referring to the fact that Cuker had previous counsel who withdrew from its representation, or any topics related thereto," as irrelevant and highly prejudicial under Rule 403. *See id.* at 2–3. Walmart responds that it "does not intend to unduly draw attention to the fact that Cuker was formerly represented by other counsel," but that "it is unavoidable that this fact will come to the jury's attention," for example, if videotaped depositions are introduced that were attended only by Cuker's original counsel in this case. (Doc. 192, p. 3). Once again, the appropriateness of such a reference will depend on the context in which it is made, and the Court will not be able to offer guidance at this time that is any more specific than to say generally that Walmart should adhere to its promise not "to unduly draw attention" to these facts.

## 3.   Exclusion of references to Walmart's economic impact on this community.

Cuker argues that "Walmart should not discuss its philanthropic activities within the Northwest Arkansas community or imply that a judgment against Walmart could adversely impact those activities in the future." (Doc. 187-1, p. 3). Walmart "agrees with Cuker that reputational evidence under Rule 405(a) . . . does not belong in this case." (Doc. 192, p. 4). So does the Court, so it will grant Cuker's request that such references be excluded.

## 4.   Exclusion of references to Cuker's finances.

Cuker asks the Court to prevent Walmart from making any references to Cuker's financial condition, because it "has no bearing on this case." (Doc. 187-1, p. 3). Walmart

3

disagrees, and argues that some reference to Cuker's financial condition will be necessary in order to "show the value of what Cuker delivered to Walmart," and thereby defend itself against Cuker's claims for damages that exceed the price of the contract, for example, by arguing that "Cuker's total damage claim for four months of work is more than its annual gross revenues." (Doc. 192, p. 4).

Although the Court will not grant the blanket form of relief that Cuker is seeking, it will address some of the specific examples presented in the briefing. The Court agrees with Walmart that "[e]vidence of other contracts, the hourly rates that Cuker charges, how much time was spent on the project, and other matters relevant to the issue of value should not be excluded." *Id.* But, with regard to another example, the Court finds that the salaries or commissions paid by the parties to their individual employees are either not relevant at all, or that such evidence should otherwise be excluded under Rule 403. Next, the Court finds the probative value of comparing Cuker's claimed damages to its historical revenues to be substantially outweighed by the potential for confusion and/or a needless waste of time---while Cuker is forced to explain the context necessary to properly understand its revenues and/or profits and losses. Likewise, the intrinsic value of certain of Cuker's alleged trade secrets may have no correlation to the value of services rendered on a particular project in an isolated year. As to other types of financial information, the parties should be guided by the Court's rulings as to these examples, but otherwise the Court does not presently have the context in which to make blanket findings or prohibitions that would apply to every type or form of Cuker's of financial information. Accordingly, this aspect of the motion is granted in part, denied in part, and deferred in part.

## 5.    Exclusion of references to other lawsuits against Cuker.

Cuker asks the Court to prohibit Walmart from making any references to prior lawsuits concerning Cuker or its agents, employees, or representatives, on the grounds that Rule 404 prohibits character evidence and evidence of prior bad acts that are used "to prove that on a particular occasion the person acted in accordance with the character." "Prior acts include prior lawsuits," and "courts generally do not admit evidence of prior suits unless they were fraudulently filed." *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 380 (8th Cir. 2008). Walmart opposes this request and points to a 2014 lawsuit in which Cuker was sued for, *inter alia*, allegedly breaching a web design contract by providing untimely and deficient work product. *See* Doc. 192, p. 5. Walmart argues that the underlying contract in that case was for a per-template price that is much lower than what Cuker claims is an appropriate per-template damages calculation in this case. But the Court does not see why any reference to the lawsuit is necessary in order to discuss the underlying contract's price structure. And the probative value of the existence of other suits, or the mere allegations made in other suits, is substantially outweighed by the potential for prejudice, confusion, and needless waste of time discussing the claims and defenses of a different dispute.

Therefore, the Court will grant this aspect of the motion and exclude any reference to other lawsuits concerning Cuker or its agents, employees, or representatives, unless Cuker opens the door to such impeachment evidence by, for example, offering testimony that its customers were all satisfied with its work. *See id.* If Walmart believes Cuker has opened any such doors, it must approach the bench to seek an advance ruling to that effect prior to making any references to Cuker's other lawsuits.

6.     **Issues regarding the contract's scope of work and parol evidence.**

Cuker asks the Court to prevent Walmart from arguing that particular documents

outside the Consulting Agreement and Statement of Work in this case were somehow

part of the contract or that these documents altered or varied the terms of the contract.

*See* Doc. 187-1, pp. 5–9. In a similar vein, Cuker asks the Court to prohibit Walmart or

its witnesses from arguing that the contract's scope of work required Cuker to make the

ASDA website fully responsive. *Id.* at 9–11. A week after this motion became ripe, the

Court entered an Order on the parties' cross-motions for summary judgment, that it

believes addresses all of the issues raised here with respect to the contract's scope and

lack of ambiguity. *See* Doc. 197, pp. 3–17. Accordingly, the Court deems this portion of

Cuker's motion as moot, and simply observes that it will not permit either party to argue

that the contract should be interpreted in any manner that is at odds with how the Court

has interpreted it.

7.     **Issues regarding alleged Rule 30(b)(6) abuses.**

Cuker asks the Court to prevent Walmart from presenting evidence or testimony

on topics on which Walmart's corporate representative, Susie Spencer, refused to testify

at her August 24, 2016 Rule 30(b)(6) deposition. Specifically, Cuker refers to Ms.

Spencer's refusal to answer questions, pursuant to instruction by Walmart's counsel,

pertaining to the Walmart2Go website, as well as to Walmart's document retention policy

as it pertained to the destruction of information contained on Tal Herman's laptop.

Walmart opposes Cuker's request, correctly pointing out that at the time Ms. Spencer's

Rule 30(b)(6) deposition was taken, the Court had already closed discovery into the issue

of Tal Herman's laptop, *see* Doc. 143-1, p. 54, and the Court had not yet permitted Cuker

to conduct discovery into Walmart2Go, beyond preliminarily ordering Walmart to produce the front-end code for that website, in order to determine whether further discovery into Walmart2Go was warranted, *see, e.g.*, Doc. 171, ¶¶ 2–9.  Thus, it was not improper, at that time, for Walmart's counsel to instruct its corporate representative not to answer questions on those topics.

Subsequently, the Court permitted Cuker to conduct further discovery into Walmart2Go, and Cuker was given the opportunity to take the depositions of three Walmart2Go authors.  Cuker declined to do so, and Walmart sought permission to call one of those individuals at trial to testify about Walmart2Go.  The Court granted Walmart permission to do so from the bench during a hearing on March 29, 2017.  *See* Doc. 378, pp. 27–29.  Accordingly, Cuker's motion in this respect is denied.

**8.   Exclusion of evidence regarding settlement negotiations.**

Cuker asks the Court to exclude any evidence regarding settlement attempts or offers between the parties or their attorneys in this case under Rule 408.  That rule prohibits the use of such evidence "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction."  Rule 408(a).  However, it permits the introduction of such evidence for other purposes, "such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."  Rule 408(b).  Cuker's motion fails to identify any particular items of evidence that it is seeking to exclude here, much less the circumstances under which it might be offered and for what purposes, whether permissible or impermissible.  Therefore, there is an insufficient basis for the Court to enter any blanket prohibition along the lines that Cuker is requesting here.

That said, the Court would note that Walmart previously filed a more specific motion under Rule 408. See Doc. 179. There Walmart asked the Court to rule in advance that a July 16, 2014, letter from Cuker's counsel did not qualify for exclusion as an offer of compromise under Rule 408. The Court denied Walmart's motion for the reasons stated in a text only order dated January 20, 2017. That order remains in effect, and the settlement letter, Walmart's response, and any testimony surrounding those settlement negotiations are excluded.

9.      **Exclusion of evidence not provided during discovery or in initial disclosures.**

Cuker asks the Court to enter an order generally excluding any evidence or testimony that was not previously disclosed to Cuker in Walmart's initial disclosures, interrogatory responses, or production of documents under Fed. R. Civ. P. 37(c)(1). The Court has already entered several orders that would be inconsistent with such a ruling. *See, e.g.*, Section 7, *supra*; Doc. 378, pp. 27–29. Accordingly, Cuker's blanket request will be denied.

Cuker also asks the Court specifically to bar Walmart from offering testimony through its Rule 30(b)(6) corporate designee, Susie Spencer, about the damages Walmart allegedly sustained from Cuker's breach of contract. Although Cuker has styled this request as falling under the same general category as the previous one (regarding the exclusion of evidence not provided during discovery or in initial disclosures), *see* Doc. 187-1, pp. 19–20, Cuker offers the additional reason that Ms. Spencer lacks personal knowledge and expertise with respect to Walmart's damages, citing the Fifth Circuit case of *Brazos River Authority v. GE Ionics, Inc.*, for the proposition that a corporate representative's testimony must be limited to facts and beliefs that are "based on the

8

collective knowledge" of the corporation she is representing.  469 F.3d 416, 434 (5th Cir. 2006).   The Fifth Circuit has further explained in another case that while corporate representatives may "testify to matters within the corporation's knowledge during [a Rule 30(b)(6)] deposition," a non-adverse party may not introduce Rule 30(b)(6) deposition testimony at trial in which the corporate representative is testifying "to matters outside [her] own personal knowledge" if "that information is hearsay not falling within one of the authorized exceptions."  *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 Fed. Appx. 899, 907–08 (5th Cir. 2010).

The Court notes that there is another motion currently pending before this Court in which Cuker makes objections on these same grounds to various excerpts from Ms. Spencer's Rule 30(b)(6) deposition that Walmart has designated to be introduced at trial. *See generally* Doc. 340.  The Court intends to treat that motion as superseding the instant one on this issue, and will rule on each specific objection therein rather than issuing a generic, across-the-board ruling here.  In doing so, the Court will bear in mind, on the one hand, that a "corporate representative is not permitted to repeat 'rank hearsay,'" *Union Pump Co.*, 404 Fed. Appx. at 908 (quoting *Deutsche Shell Tanker Gesellschaft mbH v. Placid Refining Co.*, 993 F.2d 466, 473 n.29 (5th Cir. 1993)), and on the other hand, that Arkansas law does not require "exactness on the proof of damages," *Bank of Am., N.A. v. C.D. Smith Motor Co., Inc.*, 353 Ark. 228, 245 (2003), and that a corporate witness does not necessarily have to be expert-qualified in order to offer lay opinion under Fed. R. Evid. 701 about the amount of damages that corporation has allegedly suffered, *see Welsco, Inc. v. Brace*, 2014 WL 4929459, at *2–*3 (E.D. Ark. Sept. 30, 2014).

**10. Conclusion.**

**IT IS THEREFORE ORDERED** that Defendant Cuker Interactive, LLC's Motion in

Limine filed on December 2, 2016 (Doc. 186) is **GRANTED IN PART AND DENIED IN**

**PART** as described above.

**IT IS SO ORDERED** on this 6th day of April, 2017.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE