IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**WAL-MART STORES, INC.**                                            **PLAINTIFF/
COUNTER-DEFENDANT**

**V.**                      **CASE NO. 5:14-CV-5262**

**CUKER INTERACTIVE, LLC**                                          **DEFENDANT/
COUNTER-CLAIMANT**

## OPINION AND ORDER

On April 10, 2017, a 2-week jury trial commenced on Plaintiff Wal-Mart Stores, Inc.'s ("Walmart") claim for breach of contract against Defendant Cuker Interactive, LLC ("Cuker"), and on Cuker's counter-claims against Walmart for breach of contract, unjust enrichment, and misappropriation of trade secrets. On April 21, the jury returned a verdict against Walmart and in favor of Cuker on each count, *see* Doc. 445, awarding damages to Cuker on its contract claim in the amount of $30,629, *id.* at 5, on its unjust enrichment claim in the amount of $400,000, *id.* at 7, and on its trade-secret misappropriation claim in the amount of $12,008,036, *see id.* at 9–12. The jury specifically found that Walmart's misappropriation of Cuker's trade secrets was "willful and malicious," except with respect to a trade secret known as the "CMS Tweak Development Tool." *See id.* On April 24, this Court entered an Order requiring briefing on, *inter alia*, what impact the underlying contract's limitation-of-liability clause would have on the damages award with respect to the CMS Tweak Development Tool, and what permanent injunctive relief, if any, Cuker should be awarded in light of the jury's verdict. *See* Doc. 450, pp. 5–6. The parties filed a joint stipulation regarding the limitation-of-liability issue on May 5, *see* Doc. 454, but

1

they were unable to reach an agreement on the matter of injunctive relief. They have provided adversarial briefing on the latter issue, see Docs. 462, 463, 468, 470, which is now ripe for decision.

## I. DISCUSSION

### A. Contractual Injunctive Relief

Cuker contends that the jury's verdicts entitle it to permanent injunctive relief under Section 4 of its Consulting Agreement with Walmart, see Doc. 124-7, pp. 3–4 ("the Confidentiality Clause"), as well as under the Arkansas Trade Secrets Act ("ATSA") at Ark. Code Ann. § 4-75-604. The decision whether to grant permanent injunctive relief is committed to this Court's equitable discretion. See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). A claimant seeking a permanent injunction must demonstrate four things:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Id. The proper interpretation of the parties' contract and the scope of injunctive relief available under the ATSA are both questions of Arkansas state law. See Doc. 124-7, p. 7 ("This Agreement is governed in all respects by the laws of Arkansas . . . ."); Sigma Chem. Co. v. Harris, 794 F.2d 371, 374 n.4 (8th Cir. 1986) (". . . trade secret law is state law . . .") (quoting Am. Can Co. v. Mansukhani, 742 F.2d 314, 334 n.24 (7th Cir. 1984)).

Cuker argues that the Consulting Agreement's Confidentiality Clause protects a universe of "Confidential Information" that extends beyond the trade secrets that the jury found Walmart to have misappropriated, and it asks the Court to enter "a forward-looking

2

injunction restricting Walmart's use of the broader universe of Confidential Information." (Doc. 463, pp. 3–4). Walmart counters that the Consulting Agreement does not authorize injunctive relief for Cuker, because Section 12 of the Consulting Agreement (which is helpfully entitled "Injunctive Relief") only explicitly discusses circumstances under which *Walmart* may be entitled to injunctive relief. See Doc. 124-7, p. 6; Doc. 468, p. 2 n.1. However, the Court believes there is no need to decide whether the Consulting Agreement authorizes injunctive relief for Cuker, because even if it does authorize such relief, the Court lacks sufficient information to craft an injunction enforcing it with any specificity beyond generic language that simply instructs Walmart to comply with the Confidentiality Clause.

The Federal Rules of Civil Procedure require that every injunction this Court enters must "describe in reasonable detail—*and not by referring to the complaint or other document*—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C) (emphasis added). Cuker's proposed injunctive language does not specifically identify any particular Confidential Information under the contract that Walmart should be enjoined from misusing. See Doc. 470-1, pp. 2–3. Given the enormous amount of information that the parties exchanged during their performance of the Consulting Agreement and during the litigation of this case, the Court believes far greater detail than this is necessary to put Walmart on reasonable notice of what conduct is being enjoined. *Cf. United States v. Articles of Drug*, 825 F.2d 1238, 1247 (8th Cir. 1987) ("The injunction fails to identify the specific drug products that Midwest is prohibited from selling or marketing and fails to specify the marketing techniques that Midwest may not employ. On remand the district court should revise the injunction so that the specific acts which are prohibited are clearly

defined within the order as required by Fed. R. Civ. P. 65(d)."); *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987) ("Broad language in an injunction that essentially requires a party to obey the law in the future is not encouraged and may be struck from an order for injunctive relief, for it is basic to the intent of Rule 65(d) that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits.").

## B. Statutory Injunctive Relief

The Court turns now to the issue of injunctive relief under the ATSA, which authorizes enjoinment of "[a]ctual or threatened misappropriation" of trade secrets. Ark. Code Ann. § 4-75-604(a). At trial, Cuker put on proof that Walmart saved itself roughly six months of development time by misappropriating Cuker's trade secrets, and argued that Cuker was entitled to disgorge the amount of money by which this six-month head start unjustly enriched Walmart. *See* Ark. Code Ann. § 4-75-606(b). The jury agreed, and returned a verdict finding that Cuker was entitled to recover the full amount of damages for trade-secret misappropriation that it requested under this theory. Cuker recognizes that "[t]he jury's award of damages compensated Cuker for Walmart's past" trade-secret misappropriation, but Cuker also seeks entry of a permanent injunction prohibiting Walmart from further future misappropriation of those same trade secrets. *See* Doc. 463, pp. 1–2.

The Court finds, as a threshold matter, that Cuker has shown all four things it must demonstrate in order to be entitled to injunctive relief. First, Cuker has shown irreparable harm by Walmart's actual or threatened misappropriation of its trade secrets, because the theory of misappropriation on which Cuker prevailed at trial included disclosure of

4

Cuker's trade secrets to third parties. *Cf. Sys. Spray-Cooled, Inc. v. FCH Tech, LLC*, 2017 WL 2124469, at *13 (W.D. Ark. May 16, 2017) (Hickey, J.) ("Without evidence that Defendants disseminated, disclosed or otherwise irreparably diminished Systems' trade secrets, the Court cannot presume that Systems has been irreparably harmed."). Second, and consequentially, Cuker has shown that remedies available at law, such as monetary damages, are inadequate to fully compensate it for prospective injury. *See General Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009) ("Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages."); *see also Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008) (implicitly subsuming the factor of inadequate legal remedies within the factor of irreparable harm). Third, Cuker has shown that the balance of hardships between it and Walmart weighs in favor of an injunction; not only is Walmart many times larger than Cuker, but per the jury's verdict, Walmart has only itself to blame for whatever hardships an injunction may cause it.[1] And fourth, the public obviously has an interest in seeing the law enforced; at any rate, there is nothing in the record showing that the public would be harmed by entry of a permanent injunction.

Nevertheless, Walmart opposes the entry of a trade-secrets injunction, contending that any such injunctive relief would be duplicative, given the theory of damages on which

---

[1] The theory of Walmart's case included proof that Cuker's trade secrets had not even been used in its code base since early 2015. However, there was credible expert testimony at trial that Cuker's trade secrets—or at a minimum, remnants of such code—continue to reside within Walmart's code repositories. Thus, even if not in present use, by retaining portions of Cuker's trade secrets Walmart still possesses the *ability* to misappropriate Cuker's trade secrets in the future.

Cuker prevailed at trial. Specifically, Walmart argues that "[t]he situation here is directly analogous" to the case of *3M v. Pribyl*, 259 F.3d 587 (7th Cir. 2001), in which the Seventh Circuit explained:

> In this instance, the district court made a factual determination that Accu-Tech would have been able to independently develop 3M's trade secret in a period of less than two years—a conclusion which 3M does not dispute. . . . As such, by the time the district court was faced with determining whether to enjoin Accu-Tech's use of 3M's trade secret, the court believed that Accu-Tech would have discovered 3M's trade secret. Hence, the district court properly determined that once payment to 3M had been made to alleviate any commercial advantage, there would be nothing further gained by enjoining Accu-Tech from using the trade secret which they would have by that time developed.

*3M*, 259 F.3d at 609. Essentially, then, Walmart contends that Cuker has failed to satisfy the factors of irreparable harm or inadequate legal remedy.

The Court disagrees with Walmart, and believes that there is a very important distinction between *3M* and the instant case. Specifically, the Court does not understand Cuker's expert testimony at trial to have been that Walmart could have independently *duplicated* Cuker's trade secrets in roughly six months. Rather, the Court understands the testimony to be that the misappropriated use of Cuker's trade secrets saved Walmart roughly six months of *development time* in making its website fully responsive. See Doc. 459, pp. 18–20, 94–98 (tr. pp. 1946–48, 2022–26).

This distinction is subtle, but important to the explanation of why prospective injunctive relief is not duplicative of the jury's awards for Cuker's past damages. To say that it would have taken Walmart six months to independently develop *some* set of solutions to the problems it solved by misappropriating Cuker's trade secrets, is not the same thing as saying it would have taken Walmart six months to independently develop *Cuker's* particular solutions. For example, as Walmart has repeatedly emphasized, Cuker

6

did not invent phased release, which is a conceptual solution to certain problems that may arise in responsive web design. But Cuker *did* invent a *particular technique* for implementing phased release. The fact that it may have taken Walmart some number of months to independently develop its own phased release support technique, does not imply it would have taken Walmart that same number of months to independently develop *Cuker's* phased release support technique. Indeed, the Court does not presently see any evidence in the record to support the proposition that Walmart would have *ever* independently developed Cuker's trade secrets. Thus, unlike in *3M*, it cannot be said that "there would be nothing further gained by enjoining [Walmart] from using the trade secret which they would have by [this] time developed," since there is no basis for concluding in the first place that Walmart would have developed Cuker's trade secrets by now.

Relatedly, Walmart argues that the ATSA does not authorize the entry of permanent injunctions, but rather, prohibits any injunction from extending beyond the life of the trade secret in question. The specific statutory language on which Walmart relies for this argument can be found in Ark. Code Ann. § 4-75-604(b), which states that "[u]pon application to the court, an injunction shall be terminated when the trade secret has ceased to exist; however, the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation." The Court has not found any cases interpreting this particular provision of the ATSA, and the parties likewise appear to be unaware of any such cases. But the Court believes the statute simply means what it says: a party may *petition* the Court to *terminate* an injunction that was previously entered. Right now it is not clear to the Court what the legal standard would be upon such petition's filing—which party would

bear the burden of proof or persuasion, what the burden would be, etc. But the legal standard for the *instant* procedural posture is very clear to the Court: the ATSA plainly authorizes prospective injunctive relief upon a showing by the claimant of actual or threatened misappropriation, *see* Ark. Code Ann. § 4-75-604(a), (d), and as discussed above, Cuker has satisfied all four factors required for entry of a permanent injunction. Though the injunction may be styled as "permanent," that characterization will not operate to prevent Walmart from petitioning the Court for relief at a later time under Ark. Code Ann. § 4-75-604(b).

Having found in its discretion, then, that Cuker is entitled to injunctive relief against Walmart, the Court turns to the issue of what specific actions should be enjoined or required. The ATSA authorizes the enjoinment of "[a]ctual or threatened misappropriation," but it also authorizes courts to compel "affirmative acts to protect a trade secret." *See id.* at § 4-75-604(a), (d). The Court has reviewed Cuker's Modified Proposed Language for Injunction filed at Doc. 470-1, and finds such language to be appropriate, with three exceptions or qualifications. The first exception is that given the Court's ruling *supra* regarding injunctive relief under the Consulting Agreement, the Court will not adopt the language proposed in Section (a) of Doc. 470-1. The second exception is that the Court will not adopt the language or relief proposed in the final paragraph of Section (d) of Doc. 470-1, because it is unacceptably vague and to some extent duplicative of the relief proposed in the two paragraphs immediately preceding it. Third, and more generally, is that for the sake of clarity and concision the Court will make certain non-substantive alterations to the proposed language; the injunction will be set forth within

the Judgment, and the Court expects that those alterations and the reasons for them will be evident to the parties upon their review of the Judgment.

## C. Contractual Limitation on Liability

Having resolved the matter of injunctive relief, the Court turns now to the parties' Joint Stipulation Regarding Cuker's Claim 4-2 (Doc. 454), and finds it to be appropriate in light of the Court's previous rulings regarding the Consulting Agreement's limitation-of-liability clause. Accordingly, the jury's award on Cuker's Claim 4-2 will be reduced from $2,788,690, see Doc. 444, p. 10, to $547,090. This will have the effect of reducing the jury's total award to Cuker from $12,438,665 to $10,197,065.

## D. Other Pending Motions

The Court observes that the docket currently shows three motions still pending: Walmart's pre-verdict Motion for Judgment as a Matter of Law under Rule 50(a) (Doc. 420), Cuker's Motion for Sanctions (Doc. 464), and Cuker's Motion for Attorney Fees (Doc. 473).[2] Because the Court did not grant Walmart's Motion for Judgment as a Matter of Law prior to submitting the action to the jury, the Court will direct the Clerk of the Court to terminate that Motion under Fed. R. Civ. P. 50(b). Walmart may, of course, renew its Motion for Judgment as a Matter of Law under Rule 50(b) or request a new trial by no later than 28 days after Judgment is entered. Judgment will be filed contemporaneously with this Order, but Cuker's Motions for Sanctions and Attorney Fees will be resolved in a separate forthcoming order, since such relief may be awarded or denied after the entry of Judgment. See Fed. R. Civ. P. 54(d)(2)(B)(i).

---

[2] Cuker has also submitted a Bill of Taxable Costs (Doc. 475).

Finally, Walmart has requested in a footnote to a brief that "the Court stay implementation pending appeal or, at the very least, pending resolution of Walmart's Rule 50 motion." *See* Doc. 468, p. 5 n.3. The Court is inclined to grant this request, but only after Walmart has filed a separate motion for stay. Such motion need not be accompanied by any supporting brief, but it should concisely articulate why cause for a stay exists, and state whether Cuker opposes the motion.

## II. CONCLUSION

**IT IS THEREFORE ORDERED** that the Clerk of the Court shall **TERMINATE** Plaintiff Wal-Mart Stores, Inc.'s Motion for Judgment as a Matter of Law (Doc. 420), and enter Judgment in favor of Defendant Cuker Interactive, LLC. Upon entering Judgment, the Clerk of the Court shall **CLOSE THIS CASE** without terminating Defendant Cuker Interactive, LLC's Motions for Sanctions (Doc. 464) and Attorney Fees (Doc. 473).

**IT IS SO ORDERED** on this 28th day of July, 2017.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

JUL 28 2017

DOUGLAS F. YOUNG, Clerk
By
    Deputy Clerk